# UNITED STATES DISTRICT COURT
### for the
### Middle District of Tennessee

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.   26-mj-1073 |
| Steven Lamont Phillips | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 28, 2026___ in the county of ___Davidson___ in the ___Middle___ District of ___Tennessee___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18 United States Code Sections 922(g)(1) and 924 | Possession of a Firearm by a Previously Convicted Felon |

This criminal complaint is based on these facts:

See Attached Statement

☑ Continued on the attached sheet.

_____
/s/ Kurt J. Wiest
*Complainant's signature*

Kurt J. Wiest, ATF SA
*Printed name and title*

Sworn to me remotely by telephone, in compliance with Fed. R. Crim. P. 4.1.

Date:   04/01/2026

_____
*Judge's signature*

City and state:   Nashville, Tennessee

United States Magistrate Judge Barbara D. Holmes
*Printed name and title*

<u>**STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT**</u>

**(Steven Lamont PHILLIPS)**

I, Kurt J. Wiest, being first duly sworn on oath, state as follows:

1. I am a Special Agent ("SA") of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have been employed with ATF since October 2010.

2. This statement is submitted in support of Criminal Complaint for the arrest of Steven Lamont PHILLIPS, for the following offense: possession of a firearm by a previously convicted felon, in violation of Title 18, United States Code, Sections 922(g) and 924.

3. The facts contained in this statement are based on knowledge or information personally learned during the investigation as well as from other law enforcement sources and law enforcement reports related to the investigation. This statement does not provide each and every detail known by me regarding this investigation but rather provides information necessary to establish probable cause for the arrest of the referenced suspect for the stated offense. Except where indicated, all statements referred to below are set forth in substance and in part, rather than verbatim.

<u>**PROBABLE CAUSE**</u>

4. On March 28, 2026, at approximately 2:32 p.m., the Metropolitan Nashville Police Department's ("MNPD") received a call that a six-year-old male ("S.R.") had suffered a gunshot wound to the head. The MNPD's Madison Precinct was dispatched to a residence in Nashville, Tennessee, where the shooting occurred ("the Residence"). Once there, the police officers found S.R., who was unresponsive, with a gunshot wound to the head. The Nashville Fire Department ("NFD") was also dispatched to the shooting. After the NFD arrived, they transported S.R. to Vanderbilt Children's Hospital.

1

5. The police officers at the scene of the shooting secured and froze the scene. While on scene, the police officers observed a black firearm that was later identified as a Kel-Tec CNC Inc. model P3AT .380 auto caliber pistol ("the firearm") and a fired cartridge case inside the living room.

6. A detective with MNPD's Youth Services Division applied for and received a search warrant for the Residence, to search for evidence related to the shooting. The shooting scene appeared to be contained to the living room, where they found: (1) the firearm on the floor, (2) a .380 caliber cartridge case, (3) a projectile, and (4) a cellphone that belonged to PHILLIPS. All of the items were photographed and collected by MNPD Crime Scene Investigations.

7. After leaving the Residence, MNPD detectives went to Vanderbilt Children's Hospital to speak with S.R.'s legal guardian and aunt, M.P. Once there, they were met by a Department of Children's Services worker who took them to S.R.'s hospital room. He was still alive, but the detectives were told that S.R. would not survive; he was expected to succumb to his injuries within the next 12-24 hours.

8. The next day, on March 29, 2026, at 12:15 a.m., the detectives conducted an interview of PHILLIPS at MNPD headquarters. At the beginning of the interview, they advised PHILLIPS of his *Miranda* rights. He acknowledged his rights and agreed to speak with the detectives. PHILLIPS stated that on the morning of the shooting, he had gone outside to do yard work. Later that morning, between 10 a.m. and noon, he went outside to his truck to get his phone. While outside, he discovered a firearm in a brushy area where the bushes had been cut down. PHILLIPS said that he picked up the firearm, put the firearm inside of his pocket, and went back inside. The firearm, according to PHILLIPS, may have belonged to the neighbors.

9. Once he was back inside the Residence, PHILLIPS started playing with his S.R.

2

before falling asleep on the living room floor. He woke up to the sound of a gunshot and saw a muzzle flash. Then, PHILLIPS saw that S.R. had shot himself and was lying on the floor. PHILLIPS attempted to apply pressure to the gunshot wound, attempted to keep S.R. awake, and yelled for his sister to call the police.

10. The detectives told PHILLIPS that he was being charged with felon in possession of a firearm and PHILLIPS acknowledged that he was a felon. The detectives asked PHILLIPS, after finding a firearm that did not belong to him, why he did not call the police to turn the firearm in. He responded that his phone was dead. They also asked him why he did not use his sister's phone to call the police to turn the firearm in, and PHILLIPS said that when he got back inside that he started playing with his son and did not think about it.

11. Later that day, detectives conducted an interview with M.P. and she said that she does not own any firearms, that there are no firearms inside her home, and that only PHILLIPS could have had a firearm inside of her home. At the time of the shooting, only M.P., PHILLIPS, and S.R. were at her house. PHILLIPS does not live at her house, but he had been around her house the last day or two. She was not aware of PHILLIPS finding a firearm outside.

12. I have received training as an ATF interstate nexus expert and have confirmed the above referenced firearm meets the definition of a firearm, under Title 18, United States Code, Section 921(a)(3). The firearm was not manufactured in the State of Tennessee; and therefore, at some point, has travelled in and affected interstate or foreign commerce.

13. I have conducted criminal history queries on PHILLIPS and learned that he has four prior felony convictions from Davidson County, Tennessee. He was convicted of aggravated robbery on April 27, 1994; possession of a weapon by a previously convicted felon on July 27, 2005; possession of a weapon by a previously convicted felon on June 2, 2006, and attempted theft

over $10,000 but under $60,000 on June 1, 2025.

14.     I submit there is probable cause that PHILLIPS knew that he was a convicted felon on March 28, 2026, because he has pled guilty to four felony offenses and two of those convictions were for possession of a weapon by a previously convicted felon. Furthermore, PHILLIPS is currently on probation for attempted theft over $10,000 but under $60,000, a felony in the State of Tennessee. Finally, during his interview, PHILLIPS acknowledged that he is a felon.

15.     All of the events described occurred in Nashville, Davidson County, located in the Middle District of Tennessee.

**CONCLUSION**

16.     Based on the foregoing facts, there is probable cause to believe that Steven Lamont PHILLIPS possessed a firearm after previously being convicted of a felony offense, in violation of Title 18, United States Code, Sections 922(g)(1) and 924.

4
